WALKER, president of the Bank of Utica, *vs.* THE BANK OF THE STATE OF NEW-YORK.

F. H. drew a bill of exchange in the following form: " $5000. Utica, January 20, 1851. Five months after date pay to the order of F. H. five thousand dollars, value received, and charge the same to the account of (signed) F. H. agt. Clayville Mills." This was directed "To E. C. H. Esq. of New-York," and indorsed " F. H. Utica, T. P. B. Utica." . The defendant, as the agent of the holders, presented the bill to the drawee for acceptance, who wrote across the face thereof, " *Accepted payable at Am. Ex. Bank, Clayville Mills, by E.*

Walker *v.* The Bank of the State of New-York.

*C. H. Treas.*" The Clayville Mills was a corporation doing business at C. in the county of Oneida. *Held* that the acceptance not being according to the tenor of the bill, the defendants should have treated the bill as dishonored, and given notice of non-acceptance to the indorsers; and that for neglecting to do so, in consequence of which the indorsers were discharged, the defendants were liable to the holders.

THIS was an action to recover the amount of three bills of exchange, on the ground that the defendants as agents of the plaintiffs, the holders of the bills, neglected to give notice of non-acceptance. The bills were discounted by the plaintiffs in regular course of business, and forwarded to the defendants, their correspondents in New-York, for collection. The drawee resided there. The following is a copy of one of the bills: "$5000. Utica, January 20, 1851. Five months after date pay to the order of Fredk. Hollister, five thousand dollars value received, and charge the same to the account of (signed) F. Hollister agt. Clayville Mills," directed "To E. C. Hamilton, Esq. New-York," indorsed "F. Hollister, Utica. T. P. Ballou, Utica." The defendants presented the bill to the drawee, who wrote across the face thereof as follows : "*Accepted payable at Am. Ex. Bank Clayville Mills by E. C. Hamilton, Treas.*"

The other two bills were each of the same amount, the drawee the same, but the drawers were the "Empire Mills," by Hollister, agent ; and there were the same indorsers, with the addition of "James Rhodes." The acceptance was also the same, except the substitution of the name of "Empire Mills." The defendants treated the acceptances as according to the tenor of the bills and neglected to give any notice of dishonor.

The Clayville and Empire Mills were manufacturing incorporations, doing business in the county of Oneida.

The cause was tried at the Oneida circuit in June, 1852, before Justice Harris. A verdict was directed for the plaintiffs for the amount of the three bills, the judge holding that Hamilton could not be charged as acceptor proper.

*Ward Hunt,* for the plaintiffs.

*A. W. Clason, jr.* for the defendants.

*By the Court,* HUBBARD, J.　The only question presented is whether Hamilton, the drawee, can be charged as acceptor. If he cannot, the defendants' liability is undisputed, because of their neglect to give notice of dishonor.

It is an undoubted rule that an acceptance dispensing with notice, must be absolute according to the tenor of the bill; not qualified, or varying in any material particular. (*Story on Bills,* § 240, *and cases cited in note* 2. *Chitty on Bills,* 329.)　The obvious reason is, that antecedent parties, if made liable, are entitled to full recourse against the acceptor, which they cannot have if the acceptance is conditional.

It is also well settled that no one but the drawee named, can become an acceptor, except for honor *supra protest.* (*Story on Bills,* § 121, *et seq.*)　In this case there was no acceptance for honor, because there was no notice of non-acceptance given, and it is perhaps unimportant to inquire what responsibility the drawers have incurred to the holder of the bills, by assuming through an authorized agent, to become acceptors.　As to them, their acceptances may perhaps be regarded as a *waiver* of notice of non-acceptance, inasmuch as the drawee was their agent, and they had no funds in his hands for payment.　However that may be, the inquiry now is, whether Hamilton the drawee, can, according to the law merchant, be charged as upon an absolute acceptance.　This suggests the main question in the case, and it is one of general interest.

I fully concur with the defendants' counsel, that any writing upon a bill of exchange by the drawee, will satisfy the requirement of the statute, which *is expressive of an intent, to accept.* It need not be formal; it may be by simple signature, or significant word as "seen," "accepted," "honored," or the like; in short any writing signifying an intention to give the holder to understand, that an acceptance according to the request, is designed. (*Chitty on Bills,* 327.　3 *Kent,* 184.　2 *Hill,* 582.) But this liberal rule, which is made to satisfy our statute, requiring that an acceptance to be valid shall be in *writing* and *signed* by the acceptor or his agent, has no application to this case; for the reason that the *intent* on the part of the drawer

Walker *v.* The Bank of the State of New-York.

to be bound, cannot be gathered from the acceptances. A contrary intention is plainly inferrible. No plainer language could have been adopted to signify the drawee's intent not to comply with the drawer's request. The holder could not have misapprehended, with a moment's thought, that the intention was to interpose a third party as acceptor; and when a contract of acceptance is thus explicit, free from all ambiguity or doubt, there is no room for construction. Courts are bound, if practicable, to give effect to contracts, according to . their intent, either literal or constructive; and if the intention is obvious from the language used, but legally inoperative, vitality cannot be infused by interpolating terms or stipulations. This would be in effect, as in the case at bar, substituting an entirely new . contract, the making instead of giving efficacy to, the agreements of parties.

But it is insisted that the acceptances are binding upon Hamilton, because he vainly assumed to bind his principals, a third party, as acceptors. In discussing this point, I shall give the defendants the benefit of the assumption that Hamilton was in fact the agent of the nominal acceptors, and that he transcended his powers in his attempt to accept in their name. The ground upon which it is insisted the acceptances should be held to be Hamilton's personally, is, that an agent renders himself personally responsible when he makes a contract upon terms which he knows he has no authority to agree to, although the contract be made in his line of business as agent. This doubtless is good law, when applied to transactions or contracts not required to be in writing, and which *are not in writing*, and which are valid in law and executed. Such were the cases of *Meech* v. *Smith*, (7 *Wend.* 317,) and *Feeter* v. *Heath*, (11, *Id.* 477.) But this doctrine, which proceeds on the hypothesis that the agent *in* tended to incur a personal obligation, has no application to a contract reduced to writing, executory in its character, and carefully framed and executed in the name of another. There is a class of cases, where an agent contracting in his own name, but describing himself as agent of another, is held to be, in legal contemplation, the principal. But the rule of law applicable to

Walker *v.* The Bank of the State of New-York.

this case, and all others, of written contracts made and executed in the name of a third person as principal, it seems to me is, that where the pretended agent acts .wholly without authority, or where he exceeds his delegated powers, but signs his name to the contract only as agent, he cannot be sued *upon that contract* as principal. (2 *Kent's Com.* 631, 3*d* ed. *Long* v. *Colburn*, 11 *Mass. Rep.* 97. *Chitty on Contracts*, 211, 8*th Am.* ed.) The fact of the execution of the contract in the name of another, is conclusive that the agent did not intend to become personally liable, and he cannot therefore be charged upon the instrument itself. No presumption of law as to intent, can be indulged, for the intent is obvious; the writing binds the principal named, or no one. There is no hardship in this rule, and no necessity of interpolating a contract, when it is reflected, that a party injured by the invalidity of the writing, has a more stringent and efficacious remedy against the agent for his deceit.

There is involved or implied in every agency transaction, a representation of the truth of the fact of authority to act as agent in the matter. And if that representation is false, as to the existence of an agency or as to the extent of authority, a third party suffering, is entitled to his action *on the case for the deceit.* The damages in such case would be coextensive with the injury sustained, which would doubtless be recovered by the terms of the contract, and the coercive process of the law, to enforce collection, is superior to that in an ordinary action of assumpsit. It seems to me therefore that it would consist better with well settled rules of law to turn a party over to this ample remedy, than to hold an agent liable as principal upon a written contract executed without authority; when the intent not to be bound is apparent.

I can see no reason in the position of a drawee, as in this case, in applying any different rule, than is applicable to any written contract. The drawee here, has assumed to deal with the bills, but has not given the holder to understand that he intended to accept personally, and hence I think the names of the nominal acceptors should not be *stricken out*, leaving, as is sought to be done, that of Hamilton standing alone as acceptor.

It follows therefore, that the defendants should have treated the bills as dishonored, and given notice of non-acceptance to the indorsers, who by the omission are discharged from liability.

The judgment must be affirmed.

[ONONDAGA GENERAL TERM, October 4, 1852.   *W. F. Allen, Selden* and *Hubbard,* Justices.]