S. B. Strong, J.
The evidence advanced by the plaintiffs was supposed to warrant the inference that the defendants were general partners, and that their association was not confined to the transaction mentioned in their contract with the Attica and Hornellsville Railroad Company, dated on the 29th of November, 1850, and which, by its terms, was to end on the 1st of January, 1852, previous to the dates of the notes and drafts on which this- action was instituted. In the articles of agreement signed by them they are described as “partners under the firm of Lauman, Rockafellow & Moore.” The defendants’ counsel objected that this was not competent evidence; but it seems to me that a written admission, signed by the parties, is not only legitimate proof, but the strongest proof, of the admitted fact, as against them. It was also proved that each of the defendants had subscribed the partnership designation to several notes and drafts, after the business *479 mentioned in the agreement, and for which it provided, had terminated. They indorsed the firm name in the summer of 1852, some twelve, fifteen or twenty times. The defendant Lauman indorsed such name as late as October, 1853. The witness who proved these facts, testified further that there had been blank indorsements made of the firm name when all the defendants were present; that certainly two were present, and he thought all of them were. The note and drafts upon which this suit was brought were dated in July and October, 1853. They were made to take up other notes which had been indorsed in a similar manner by the defendants. To meet this evidence, the defendant Moore, who signed the indorsements on the note and drafts in question, testified that there never was any partnership between the defendants, except in the business mentioned in the contract with the railroad company, and that such business had been completed in the fall of 1852. The statements of this witness were rendered somewhat doubtful by the acts of the defendants to which I have alluded; but if he was to be believed—and whether he was or not was a proper question to be determined by the jury, and which they no doubt did decide—the defendants were, nevertheless, responsible to others ,as partners by still holding themselves out as such by their acts, and especially as to the plaintiffs, who had been frequent dealers in notes indorsed by them in their associated capacity, and who had received no notice of a dissolution of their connection.
The defendants, by their indorsements, were estopped from denying, as to subsequent parties, the genuineness of the signatures of the makers, drawers or antecedent indorsers, or their capacity to act as such. If, as was objected by their counsel, they were mere accommodation indorsers, and that fact was known to the plaintiffs when they discounted the paper, I cannot see why the estoppel was not applicable against them. The admissions evidenced by their indorsements were equally strong, and subsequent parties had a right to rely upon them. Their liabilities in other respects might have been somewhat modified. But the probability is that they were *480 not mere accommodation indorsers. They were extensively interested in the stock of the railroad company for which the note and drafts were discounted, and they were given to take up other paper indorsed by the defendants, and thus relieve them from antecedent responsibility: and possibly assumed for their own benefit.
The two drafts were respectively addressed to the drawee in New York, and were accepted by him, payable at the Continental Bank in that city, where the demand of payment was made. The defendants’ counsel contended on the trial that the drafts were not duly accepted or demand of payment properly made, and they cited the case of Woodworth v. The Bank of America (19 Johns., 391), to show that such practices were irregular and did not attach any responsibility to them. In that case, however, the note was in-fact payable in Albany, and there was a marginal memorandum, signed by the maker, that it was payable in New York. That memorandum was made after the note had been indorsed by Judge Wood-worth, and without his knowledge.- It was held, and perhaps properly, that the memorandum was an alteration of the note, and discharged the indorser. • The alteration consisted in making it payable in a different city, and that rendered it material. It is not of course an alteration of a draft to accept it as payable at a designated place in the same city, and if it could be deemed a change at all, it is not made by the payee or indorsee, nor is it at all material. So, too, in the case of Walker v. The Bank of the State of New York (13 Barb., 636), the draft was directed to the drawee in New York and accepted by him, payable at Olayville Mills, in Oneida county. It was properly held that the change was material and rendered the acceptance void, and that as no notice of such acceptance was given to the indorsees, they were discharged. If, in the case under consideration, the drafts had been made payable at a particular store, counting-house or office in New York, it would have been a change, although I do not think that it would even then have been a material one, to have accepted it as payable at another place in the same efty. No possible *481 injury can result to the drawer or indorser by making a bill of exchange, directed to the drawee in a city generally, payable at some particular place in the same city. It becomes pro hac vice the place of business of such drawee. The cases differ as to whether the holder may not, nevertheless, present the bill for payment at the ordinary place of business, or if he has none, the residence of the drawee; but I have seen none which decides that he is bound to do so. I am confident that the practice pursued in this instance corresponds with commercial usage, and think that it should be sustained.
The three defendants reside at different places, and the notary sent notices directed to the firm at each place. They contended at the trial that the notices should have been addressed to them individually. But if the directions were irregular, the fault is attributable to them. The indorsements of the drafts were in each case in the following words: “ Bauman, Rockafellow '& Moore, Philadelphia, Pa., Harrisburgh, Pa., and Lewisburgh, Union Co., Pa.and surely the notary was justifiable in addressing the notices conformably to their own designations.
The notices were not left at the post-office in Hew York until on the second day after demand of payment had been made, and the notary certifies as the reason, that the interme'diate day was Thanksgiving day. It was contended on the argument that the notary’s certificate was not competent evidence that the day designated by him was Thanksgiving day. The objection was not raised on the trial, where if it had been made and there had been anything in it, it might have been obviated by evidence; of course it cannot prevail now.
■ The refusal of the judge to charge the jury (agreeably to the request of thé defendants’ counsel), that if they should find that the indorsements were made after the dissolution of the partnership between the defendants, the evidence of the notices given to them was insufficient to charge them as indorsers, as such notices should have been addressed to them individually and not in the name of the firm, was proper, for the reasons 'which I have before stated. The judgment should be affirmed.
*482 All the judges concurred. Four of them were of opinion that Thanksgiving day being appointed by proclamation of the Governor, the courts are to take judicial notice of the time of its occurrence. Others thought that the act not being strictly an executive one, did not come within the rule of judicial cognizance. The point was not passed upon.
Judgment affirmed.